HARRY FRIEDMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 104611. Promulgated December 10, 1941.

*Harry Friedman, Esq.*, pro se.
*P. A. Bayer, Esq.*, for the respondent.

OPINION.

ARUNDELL: The petitioner contends that the $25,333.36, part of the Tex-Penn fee retained by him, in addition to the $6,333.30 representing his admitted earned share, was not taxable income to him. His principal argument is that the fee was a gift from Horace A. Mann. He contends further that, whether it was a gift or not, it was taxable to the assignor.

The several elements of a gift have been too often stated to need repetition here. For the purposes of this case we can adopt the petitioner's proposed definition that a gift is a voluntary transfer of property from one to another without any consideration or compensation therefor. The transfer from Mann to the petitioner, which resulted in the petitioner's receipt of the $25,333.36 in dispute, is evidenced by the letter of May 19, 1933, quoted in the findings. That letter authorized the petitioner "to complete all work on the above-named cases and arrange for and collect the fees due." At that time work on the Tex-Penn case had not been completed. It had been submitted to the Board for decision, but as it turned out, much more work was to be done. Prior to the assignment petitioner had

been connected with these cases for more than four years. He had attempted their settlement and when this seemed no longer possible, turned his efforts toward preparation for trial. In spite of the fact that petitioner had no written contract with the Tex-Penn clients, he was fully recognized as one of their attorneys at the time of the trial before the Board and, in fact, he was the only one of the three associates who was an attorney of record in those proceedings. At the time of the assignment Mann was in ill health and wanted to retire from active practice. Upon this evidence the true situation appears to be that Mann made the transfer in consideration of the petitioner's agreement to complete the unfinished cases that were in the office. The petitioner's assumption of the duty "to complete all work on the above-named cases", thereby relieving Mann of his burdens, was consideration for the transfer. Where there is consideration there can be no gift. *Noel* v. *Parrott*, 15 Fed. (2d) 669; *Levey* v. *Helvering*, 68 Fed. (2d) 401.

If there was any gift from Mann to the petitioner, it was a gift of Mann's interest in the cases in his office and not a gift of the fee paid by the clients. As to some of them, his only remaining interest was the collection of fees. But the Tex-Penn case was not completed and there was no fee to assign by gift or otherwise. Mann's interest in it was the dual one of completing it to his clients' satisfaction and collection of the fee to be thereafter fixed. His agreement with Jones shows that he was to render a bill "if you and/or I (or my associates) succeed in bringing these cases to a conclusion satisfactory to our clients."

There is some suggestion in the petitioner's brief that the amount ultimately collected had been earned by Mann at the time of the assignment, and, it is argued, it was income to Mann under the case of *Helvering* v. *Enright*, 312 U. S. 636. The *Enright* case decides only a question of the reporting of income for a period ending with the death of a taxpayer and has no application at all to the issue in this case. The extent to which the Tex-Penn fee had been earned at May 19, 1933, is a matter of proof on the part of the petitioner. His evidence falls short of establishing the fact. He points to a letter dated June 1, 1933, from F. B. Parriott in which Parriott says "we think your request is entirely reasonable and will be glad to consider and discuss with you any suggestion you have along the lines of partial or full payment of your fees." We do not read this as an admission that a fee was then due. It was written in response to one from the petitioner to Benedum and Parriott asking "whether there is any objection on your part to entertaining at this time a bill for, or a discussion of some partial payment on account of services rended by your [our?] firm in connection with those cases." All that the clients agreed to do was to consider and discuss with the

petitioner the matter of payment of a fee, which is far from an admission that any fee had then been earned. Moreover, later in the same year Parriott again wrote, calling the petitioner's attention to a previous payment made by check bearing the notation that no other was to be chargeable prior to final disposition of the case, and stating that Benedum "felt that in view of the substantial payments already made, it was only fair that your firm wait until the case was disposed of before requesting further payments." This evidence is not only not convincing that the fee had been earned at the time of the assignment, but rather definitely indicates that the clients regarded it as not then earned.

To sustain his argument that the Tex-Penn fee should be taxed to Mann as an assignor, the petitioner cites *Lucas* v. *Earl*, 281 U. S. 111; *Helvering* v. *Horst*, 311 U. S. 112; *Helvering* v. *Eubank*, 311 U. S. 122; and *Harrison* v. *Schaffner*, 312 U. S. 579. They are not helpful to his case. They are cases of the assignment of income only. Here the assignment is of all of Mann's "right, title, or interest in and to all of the cases now handled by this firm." This is an assignment of the property out of which the income grew and not an assignment of the income alone. The governing case is *Blair* v. *Commissioner*, 300 U. S. 5.

Finally, the petitioner contends that in any event the most that can be taxed to him is the excess of the fee collected over the value of Mann's interest in the fee at the date of the assignment. The petitioner testified that that value was approximately $24,000. We have made no finding on this because under our view that there was no gift of the fee the value is not material.

What we have said so far is based upon the theories of the parties to the case and their arguments thereon. Another view compels the same result. That view is that the petitioner's retention of the larger share of the Tex-Penn fee was simply a readjustment of fees among associates in recognition of the amount of labor performed in bringing the case to a conclusion. The petitioner's testimony establishes that after he came into the case the services of Mann and Jones diminished and the petitioner's became greater. Mann participated in one conference in the Bureau of Internal Revenue after petitioner came into the case. Thereafter his participation was limited to consultation with his associates. Neither Mann nor Jones was counsel of record in the trial before the Board. Mann attended the trial a part of one day. The petitioner was one of record counsel and attended the trial regularly. After May 19, 1933, Mann had nothing to do with the case. Jones assisted in preparing the brief in the appeal to the Circuit Court of Appeals, but was not counsel of record, and thereafter had no more to do with the case. The petitioner assisted in preparing the case for appeal and was counsel of record in both the

Circuit Court and the Supreme Court. Both Mann and Jones were ill and were away from their offices at times. At such times the petitioner carried on the firm's work on the Tex-Penn case. The petitioner's testimony is clear that the bulk of the work fell on him. On these facts it was only natural that there should be a readjustment of fees in some degree proportionate to the amount of services performed, particularly in view of the fact that Mann was withdrawing completely, leaving the case unfinished. While the petitioner and his associates were not partners, they held themselves out to the world as a law firm, and their relations were close enough to those of partners to warrant a readjustment of earnings as is not uncommon among partners. On the whole record we are of the opinion that Mann's assignment to the petitioner was in recognition of the services performed by the petitioner over and above those contemplated when the association began, and that it was an adjustment of the original arrangement among the associates. Accordingly, the sum received and retained by the petitioner was income from professional fees.

Reviewed by the Board.

*Decision will be entered for the respondent.*

———

TYSON, dissenting: The majority opinion reaches the conclusion that there was no gift from Mann to petitioner because Mann in making the transfer to petitioner by the letter of May 19, 1933, received as consideration therefor petitioner's agreement to complete the unfinished cases that were in Mann's office, including the Tex-Penn case. The grounds in the opinion for reaching that conclusion are (a) that the expression in the letter to the effect that petitioner was "authorized to complete all the work on the above named cases and arrange for and collect the fees due", when taken in connection with (b) the facts that, at the time of the writing of the letter, Mann desired to retire from active practice and that much more work was yet to be done, show that petitioner assumed the *duty* "to complete all work on the above named cases", including the Tex-Penn case and that the assumption of such duty constituted a consideration for the transfer resulting in there being no gift made thereby.

The fact that Mann desired to retire from active practice and that there was much more work to be done on the Tex-Penn case after the date of the letter would seem to have little, if any, evidentiary bearing on the question of whether or not there was a consideration for the transfer, since the sole agreement of the parties is embraced in the letter and the acceptance of its terms by petitioner. The letter is, in my opinion, so plain and unambiguous in its terms as to preclude any attempt at interpretation through consideration of the mere circumstances that Mann desired to retire from active

practice and that there was, at the time of the writing of the letter, much work yet to be done in the Tex-Penn case; and in this connection it is to be noted that at the time of the writing of the letter the Tex-Penn case had been submitted to the Board and it was not known, of course, what the decision of the Board therein would be and, consequently, it was not known what, if any, further work would be done by counsel engaged in the case. So, in the final analysis, the specific question presented as a test of the soundness of the conclusion reached in the majority opinion, that there was no gift of Mann's interest in the Tex-Penn fee, is, Did petitioner in accepting the terms of Mann's letter agree to complete the work on the Tex-Penn case because of the language in the letter which "authorized [petitioner] to complete all the work on the above named cases and arrange for and collect the fees due"?

I do not think the language above quoted from the letter indicates that petitioner accepted the transfer of Mann's interest in that part of the fee in the Tex-Penn case already earned with the burden imposed upon petitioner, as a consideration for the transfer, that he should complete the work on that case. Such language merely gave petitioner "authority" to do such work, if any, but so far only as Mann was concerned. By the use of these words it was obviously intended by Mann that if the Tex-Penn parties were willing, and only in such event, petitioner could step into Mann's shoes and would be fully authorized, so far as Mann was concerned, to complete the work in the Tex-Penn case. Without further authority from the Tex-Penn parties to complete the work petitioner could not have completed it, since he at the time of the transfer had, as shown by the record (but not by the majority opinion), no contractual relations, express or implied, with the Tex-Penn parties with regard to such work and the question of whether or not those parties would authorize or permit petitioner to complete the work, if any further work was to be done, was an open one. Mann, at the time the letter was written, was the only one of petitioner, Jones, or Mann, who sustained any contractual relations, express or implied, with the Tex-Penn parties with regard to their pending case. Then how can it be said that Mann, in authorizing petitioner to complete the work, intended to, or did, or could, impose upon petitioner, as a consideration for the transfer, an obligation to complete the work, since such obligation could not be performed by petitioner unless and until it was so agreed to by the Tex-Penn parties.

There remains the question of whether the petitioner sustained his burden, under the determination of the respondent, of affirmatively showing that the transfer made by the letter of May 19, 1933, was a gift from Mann to petitioner of Mann's portion of the fee in the Tex-Penn case earned by Mann up to the time of the transfer.

Immediately prior to the writing of the letter in question Mann called petitioner into his office and said: "Harry, I am going to do something for you your father never did. I am going to give you all my interest in the cases we have—draw up a paper", and after this statement by Mann the letter was written by petitioner and signed by Mann. The letter evidencing the transfer fails to show, as above stated, that there was any agreement for petitioner to complete the work on the Tex-Penn case. On the contrary, the language of the letter itself shows that a gift to petitioner was intended to be, and was, made by Mann of his interest in the fee in the Tex-Penn case earned up to the date of the letter to petitioner. The letter, signed by Mann, recites no consideration, but states, *inter alia*, that "my interest in the fees amounting to one-half or more of all fees to be collected in the above-named cases is hereby assigned and granted to you * * * I desire you to have, and this letter *gives you* whatever interest I have or may hereafter have in said cases by reason of our association." (Italics supplied.) Petitioner testified that the transfer was made to him without consideration, and a vice president of the Munsey Trust Co. who was well acquainted with Mann, seeing him probably three or four times a week in the bank and probably two or three times a week in an apartment building in which they both lived in Washington, testified that just about the time Mann left Washington and shortly after writing the letter Mann stated to him that his (Mann's) health was poor, "that he was going to give up his business and that he had given to Mr. Friedman his interest in all the unfinished business in the office." This testimony of the vice president of the Munsey Trust Co. was uncontradicted and its admission in evidence was not objected to by respondent. In my opinion, the evidence just recited establishes that Mann, by his letter of May 19, 1933, made a gift to petitioner of his, Mann's, interest in his portion of the fee in the Tex-Penn case earned up to the time of the writing of that letter.

Petitioner testified that the value of Mann's interest in the Tex-Penn case fee for services theretofore performed at the date of Mann's assignment of that interest to petitioner was "two-thirds of $35,000 or approximately $24,000", and I think that this testimony establishes that value as being $23,333.33. Petitioner, as shown in the majority opinion, had been practicing law in Washington since 1924 and had specialized in Federal tax practice, consisting of extensive appearances before the Bureau of Internal Revenue, this Board, the Circuit Courts of Appeal, and the United States Supreme Court. This experience as a practicing attorney would seem to qualify petitioner to testify as to the value of Mann's interest in the Tex-Penn

case fee at the time of the transfer to petitioner of that interest and, although of course petitioner is the interested party with respect to this matter, his testimony to this effect is undisputed and I see no reason for failing to give conclusive weight to such testimony in the absence of any other evidence to the contrary.

Since the amount of $23,333.33 represents Mann's share of the fee collected in 1938 in the Tex-Penn case for legal services rendered by him in that case prior to the assignment, it constituted income earned by Mann, petitioner's assignor, and we should hold that such assigned income is not taxable to the petitioner, assignee. *Helvering* v. *Eubank*, 311 U. S. 122. Cf. *Lucas* v. *Earl*, 281 U. S. 111; *Helvering* v. *Horst*, 311 U. S. 112; and *Harrison* v. *Schaffner*, 312 U. S. 579.

The majority opinion reaches an alternative conclusion to the effect that, even if there was a gift from Mann to petitioner, it was "a gift of Mann's interest in the cases in his office and not a gift of the fee", and that as to such gift the ruling here is controlled by *Blair* v. *Commissioner*, 300 U. S. 5, rather than by *Lucas* v. *Earl*, *supra*; *Helvering* v. *Horst*, *supra*; *Helvering* v. *Eubank*, *supra*; and *Harrison* v. *Schaffner*, *supra*, which latter four cases, the majority opinion further states, "are not helpful to this case", because such cases "are cases of the assignment of income only." I think this attempted distinction is not substantial, since Mann's only interest in the cases was his interest in the fees to be derived therefrom and the gift was of that interest, and the value thereof does not constitute income to the petitioner.

The majority opinion reaches another alternative conclusion, to the effect that "petitioner's retention of the larger share of the Tex-Penn fee was simply a readjustment of fees among associates in recognition of the amount of labor performed in bringing the case to a conclusion." I am of the opinion that the evidence does not justify such a conclusion, since, as shown by the record (but not by the majority opinion), there were no contractual relations existing between petitioner and Mann at the time of the transfer or at any other time; and there being no such relations there could have been no readjustment of fees between Mann and petitioner; and even if the transfer was made in recognition of services performed by petitioner over and above those contemplated, as stated in the opinion, it may be well said (adopting an apt expression in the hereunder cited *Bogardus* case) that it "by no means follows that [the transfer in question] was not a gratuity." Petitioner had never been in the employ of or under any agreement with Mann with regard to performing services in the Tex-Penn case, and what was further said as follows in the *Bogardus* case, where gratuities were paid by a corporation to persons who were never in its employ, is apposite to

the facts in this case: "There is entirely lacking the constraining force of any moral or legal duty as well as the incentive of anticipated benefit of any kind beyond the satisfaction which flows from the performance of a generous act." *Bogardus* v. *Commissioner*, 302 U. S. 34.

For the foregoing reasons I dissent from the majority opinion.

LEECH agrees with this dissent.