## FRIEDMAN v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4934.

Circuit Court of Appeals, Fourth Circuit.

Aug. 11, 1942.

Harry Friedman, pro se, for petitioner.

Carolyn E. Agger, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before PARKER, DOBIE, and NORTHCOTT, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is a petition to review a decision of the United States Board of Tax Appeals involving income taxes for the calendar year 1938 in the amount of $4,519.-15. A decision of the Board affirmed the finding, by the Commissioner of Internal Revenue, of a deficiency for that amount against the petitioner. The findings of fact and opinion of the Board are reported in 45 B.T.A. 976.

There is no dispute as to the facts which were found by the Board as follows:

The taxpayer is a lawyer specializing in tax practice. Another lawyer, Horace A. Mann, had been retained to represent certain clients in a tax case known as the Tex-Penn case. On April 12, 1929, Mann agreed with a third attorney, Charles W. Jones, that if Jones would assist Mann in the Tex-Penn case, Mann would pay to Jones one-third of any fee collected by him. It was agreed that Mann would render a bill for at least $50,000. On the same day, Jones agreed with the taxpayer that in exchange for the latter's assistance in the Tex-Penn case, Jones would pay the taxpayer one-half of the amount received by Jones from Mann, i. e., one-sixth of the total fee. The taxpayer made no agreement concerning fees directly with Mann. Mann had received from the Tex-Penn clients a retainer of $5,000 in 1925 when he became associated with the case and he had received an additional amount of $25,000 in 1927.

At the time of these agreements deficiencies had been proposed against the Tex-Penn taxpayers. All three lawyers workttl together for almost a year in an attempt to settle the case. To facilitate their work they took adjoining offices and adopted as a group the name of Mann,

Jones & Friedman, although there was no partnership agreement between them.

It finally appeared that no settlement could be reached, and the case was tried, briefed, and argued before the Board of Tax Appeals prior to May 19, 1933. The taxpayer was the only member of Mann, Jones, and Friedman who appeared as attorney of record in the Board proceeding.

On May 19, 1933, before the Board of Tax Appeals had decided the Tex-Penn case, Mann told the taxpayer that he was going to give to the taxpayer all his (Mann's) interest in the Tex-Penn case and instructed the taxpayer to prepare a document to that effect. The taxpayer prepared a letter, which Mann signed, stating that Mann assigned to the taxpayer all his interest in the fees to be collected in a number of cases including the Tex-Penn case. The letter further stated: "You are hereby fully and completely authorized to complete all work on the above-named cases and arrange for and collect the fees due on said cases without consultation with me, * * *." Mann was then ill and wished to retire. Immediately thereafter Mann closed his office and retired. He died about a year later.

On May 25, 1933, the taxpayer wrote to the Tex-Penn clients asking them whether they would consider a "partial payment on account of services rendered by our firm * * *". On June 1, 1933, one of the Tex-Penn clients replied that they would be glad to discuss the question of a partial or full payment of fees. The taxpayer then rendered a bill on behalf of the firm for $60,000 for the services rendered up until then. The Tex-Penn clients objected to the amount of the bill and on September 1, 1933, they notified the taxpayer that the "$25,000 payment to your firm on August 5, 1927" was subject to the condition that no other fee was to be chargeable until a final disposition of the case.

The case was decided by the Board of Tax Appeals in August, 1933. Appeals were taken to the Circuit Court of Appeals Third Circuit and to the Supreme Court of the United States. Of the group of Mann, Jones and Friedman, only the taxpayer was the attorney of record in the Circuit Court of Appeals and the Supreme Court. The taxpayer assisted in

the preparation of the record on appeal, participated in conferences, and worked on briefs in connection with the appeals. Jones assisted on the brief in the Circuit Court of Appeals. In 1938, after the case was fully completed, the Tex-Penn clients paid, by check, to Mann, Jones and Friedman $38,000. This check was indorsed by the taxpayer and placed to his credit in his personal bank account. The taxpayer retained $6,333.30 of this amount pursuant to his original agreement with Jones and an additional $25,333.36 which represented the two-thirds share transferred by Mann. Only the latter sum is here involved.

No gift tax return was filed by Mann in respect of the May 1933 assignment, nor did the estate tax return of Mann's estate report any legal fees accruing to him at the date of his death.

The statute involved is Section 22 of the Revenue Act of 1938, c. 289, 52 Stat. 447, 26 U.S.C.A. Int.Rev.Acts, page 1008, which reads as follows:

"Sec. 22. Gross income

"(a) General definition.—'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *

"(b) Exclusions from gross income.— The following items shall not be included in gross income and shall be exempt from taxation under this title:

* * * * *

"(3) Gifts, bequests, and devises.—The value of property acquired by gift, bequest, devise, or inheritance (but the income from such property shall be included in gross income); * * *."

The sole question involved is whether the amount of $25,333.36 received by the petitioner was taxable to him as recompense for professional services or whether it was received by him as donee or assignee of income which was taxable to the donor or assignor.

It is clear, from a consideration of the circumstances as outlined in the statement of facts, that at the time Mann wrote the letter of May 19, 1933, assigning to the petitioner all his interest in the fee to be paid in the Tex-Penn Oil Company case, the work was in no way completed and that no definitely fixed sum was assigned by the letter. It is also clear that Mann the donor or assignor did not regard the assignment as being one of a certain fixed amount already earned or even already due to him. Mann had received a substantial payment on his fee in the case ($30,000), was sick and wanted to retire from any activity in the practice of his profession. The case was then undecided before the Board of Tax Appeals, and was yet to be carried through the Circuit Court of Appeals for the Third Circuit and then to the Supreme Court before a final decision was secured. Had Mann regarded the interest he assigned to the taxpayer in the Tex-Penn fee as earned he would undoubtedly have included it in his tax return for that year and would have paid the Government the tax that is unquestionably due it upon this payment. It is inconceivable that Mann or the petitioner contemplated the payment by Mann of the tax upon the interest assigned which would be the case if petitioner's contention were upheld. Mann did none of the work after he turned the case over to the taypayer and earned nothing after the assignment. The taxpayer, however, as he had evidently done in the case since April 12, 1929, did the most of the work being the only attorney from the Mann, Jones, and Friedman association who appeared as attorney of record before the Board. Jones did little work on the case after the assignment from Mann to the taxpayer on May 19, 1933.

The fact that the taxpayer on May 25, 1933, wrote the Tex-Penn clients asking them to consider a partial payment on account of "services rendered by our firm" shows that even he did not consider the fee as earned or fixed at that time.

To relieve the petitioner of the payment of the tax it would be necessary to hold that the transfer to him by Mann was of a fixed, definite, amount of earned income at the time of the transfer. We cannot subscribe to that interpretation of the transaction. Mann took no further

interest in the case after the assignment; the fee was not fixed or settled until after a large amount of work had been done by the taxpayer and after extended negotiations in the year 1938, five years after the assignment.

The amount in controversy was paid for the taxpayer's services not for Mann's services and the income is therefore taxable to the man who earned it; to hold otherwise would open the way for the wholesale evasion of taxation. The Board found that the transaction in question was an adjustment of the original arrangements between the associates as to fees, in recognition of the services already performed and to be performed by the taxpayer, over and above those services contemplated by the parties when the association first began. We think this finding is correct.

We think the case is largely controlled by our decision in Doyle v. Commissioner of Internal Revenue, Cir., 102 F.2d 86, where we dealt with a related question, and by Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465. We agree with the majority opinion of the Board that the cases relied upon by the petitioner are not applicable.

The decision of the Board of Tax Appeals is accordingly affirmed.

Affirmed.